# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | |
|---|---|
| In the matter of: ) | |
| ) | Adversary Proceeding |
| HARRY ROWLAND ) | |
| (Chapter 7 Case Number 03-21823) ) | Number <u>04-02002</u> |
| ) | |
| *Debtor* ) | |
| ) | |
| BANK OF LUMBER CITY ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | |
| ) | |
| HARRY ROWLAND ) | |
| ) | |
| *Defendant* ) | |

## MEMORANDUM AND ORDER
## ON COMPLAINT TO DETERMINE DISCHARGEABILITY

On October 22, 2003, Harry Rowland ("Debtor") filed a Chapter 7 bankruptcy petition. On January 12, 2004, the Bank of Lumber City ("Bank") filed this adversary proceeding against Debtor objecting to the discharge of his debt to Bank under 11 U.S.C. § 523(a)(4) and (a)(6). This Court conducted a trial on the matter on September 10, 2004. The Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(I) and enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

AO 72A
(Rev. 8/82)

## FINDINGS OF FACT

Debtor is a general contractor doing business as Rowland Construction Company ("RCC"). Debtor works with federally and locally funded programs to rehabilitate homes in Southeast Georgia. In June of 2000, Debtor entered into a construction contract with Annie Mae Mobley to renovate her home in Manchester, Georgia ("Mobley Project"). The cost of the Mobley Project was an estimated $29,000.00. The construction project was to be funded in part by a grant from the City of Manchester's Community Housing Improvement Program and in part by the United States Department of Agriculture - Rural Development Division ("USDA"). An investigation by the fire marshal revealed that Ms. Mobley's home was beyond repair. After some delay, Debtor received approval to completely rebuild the home, and the contract cost increased to $48,000.00.

Bank and Debtor had an ongoing business relationship. Debtor had multiple outstanding loans with Bank including a $30,000.00 loan on a project known as the Chancey Project and a car note. On July 31, 2000, Debtor executed a new note in favor of Bank in the principal amount of $29,655.74. Plaintiff's Exhibit 1. As security, Debtor assigned to Bank his interest in the proceeds of the Mobley Project. On that same day, Bank's Vice-President, Troy Spires, sent notice of the assignment to Varnandoe and Associates, the administrator of the grant project, and requested that all payments toward the Mobley Project be payable to both the Bank and Debtor. Jenell Varnadoe, an employee of Varnadoe and Associates, acknowledged receipt of the notice. *See* Plaintiff's Exhibit 3. On December 5, 2000, Jenell Varnadoe sent a letter to Spires informing him that the proceeds of the loans would be made

2

AO 72A
(Rev. 8/82)

payable to both Bank and Debtor. Plaintiff's Exhibit 4.

The loan proceeds were paid in several different installments. On December 26, 2000, the USDA issued a check for approximately $10,000.00 that was payable to Annie Mae Mobley but was pre-endorsed to Bank and RCC. Plaintiff's Exhibit 5. On January 4, 2001, the City of Manchester issued a check for $11,467.00 that was made directly payable to both Bank and RCC. Plaintiff's Exhibit 6. The City of Manchester issued its final check in the approximate amount of $3,000.00. These three checks were properly negotiated, and there is no material dispute concerning them. On January 23, 2001, the USDA issued its final check in the amount of $24,606.00 ("the Check"). The Check was payable to Ms. Mobley, and there was a restrictive endorsement on the back. This final USDA check is the check that is in issue.

Bank contends that the Check was endorsed to both Bank and RCC and that Debtor altered the Check in such a way as to remove the endorsement to Bank so that Debtor could negotiate the Check without the Bank's knowledge or consent. Debtor contends that the Check was endorsed only to RCC and it was not altered in any way. Bank introduced into evidence the affidavit of W.C. Blackmon, a Community Development Manager with the USDA. In his affidavit, Blackmon stated that he placed the following restrictive endorsement on the back of the Check, "Endorsed to Rowland Construction Company and Bank of Lumber City as Final Payment on Contract Dated 8/1/00." Plaintiff's Exhibit 9.

In addition to Blackmon's affidavit, copies of both the front and back of the Check after it was negotiated were introduced into evidence. Plaintiff's Exhibit 8. It is evident from an examination of Exhibit 8 that the back of the Check was altered to remove the Bank as a payee of the Check. Although I find that the restrictive endorsement on the Check was altered and only Rowland could have benefitted from the alteration, he denied doing so and a final determination of the matter is not necessary for the resolution of this action.

Sometime after January 23, 2001, Spires contacted Varnadoe and Associates to determine when the final USDA check was to be issued, and he was told that it already had been issued. After Spires attempted to contact Debtor several times regarding the final payment, Debtor contacted Spires. Debtor stated that he had possession of the Check, but he asked Spires if the Bank would be willing to loan him more money. Bank's Board denied Debtor's request because Debtor had overdrawn his checking account and was past due on other loans.

After the Bank's refusal to loan Debtor additional money, Debtor convinced his brother to deposit the check in the brother's account at First Community Bank of Georgia and remit virtually all of the proceeds to Debtor in the form of money orders. Debtor testified that he used these money orders to clear up bad checks he had written to pay for materials and labor used in the Mobley Project.

Debtor admitted that when he kept the proceeds of the Check for himself he knew that the Bank had an interest in the proceeds and that the Bank would lose its collateral if he did not deliver the proceeds, but he chose not to give them to the Bank because he wanted to clear up his own outstanding bad checks, for fear they might lead to criminal charges.

Bank pursued a claim against First Community Bank, the depositary bank, for accepting the Check with an altered endorsement. First Community Bank paid Bank $20,000.00. Spires testified that the balance on the loan secured by the Mobley Project is approximately $6,095.41.

Bank is seeking to have its entire claim declared nondischargeable. Bank proffered that Debtor's indebtedness to Bank, including his other loans and overdrawn checking fees, totals approximately $19,079.77. Bank asserts it has spent approximately $6,942.96 in legal expenses collecting this money and it is entitled to that amount under Paragraph 17 of the note. Paragraph 17 of the note provides in part:

> I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Loan Agreement. Expenses include, but are not limited to, attorneys' fees, court costs, and other legal expenses. If this debt is collected by or through an attorney after maturity, I agree to pay 15 percent of the Principal and Interest owing as attorneys' fees . . . . To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this Debt as awarded by any court exercising jurisdiction

under the Bankruptcy Code.

Plaintiff's Exhibit 1.

## CONCLUSIONS OF LAW

*1. Existence of a Contract*

Debtor asserts that the assignment contract between the Bank and Debtor is invalid. The contract between Debtor, Ms. Mobley, and Varnadoe and Associates contains language prohibiting Debtor from assigning the contract without the written consent of Ms. Mobley and Varnadoe and Associates. Because Bank failed to obtain that written consent, Debtor contends there is no valid contract between Bank and Debtor; thus Bank's action against Debtor is not cognizable.

The Court does not find this argument to be persuasive. Varnadoe and Associates clearly had knowledge of the assignment, and they took affirmative steps that implied consent to the assignment. Jenell Varnadoe's signature, acknowledging receipt, appears on Bank's letter informing Varnadoe and Associates of the assignment. Plaintiff's Exhibit 3. Furthermore, Jenell Varnadoe's December 5, 2000, letter clearly states that the proceeds of the loans will be made payable to both RCC and Bank. Plaintiff's Exhibit 4.

Ms. Mobley's consent to the assignment was also necessary. Her endorsement appears on the checks that were pre-endorsed to RCC and Bank. Plaintiff's

Exhibit 5. This signature indicates an implied consent to the assignment.

Finally, even if Ms. Mobley and Varnadoe and Associates had not consented to the assignment, Debtor would lack standing to raise this defense. Ms. Mobley or Varnadoe and Associates may have a right to object that the assignment was not valid. However, Debtor entered into the assignment with the requisite contractual capacity, thus the assignment is valid as between Bank and Debtor. In this action, Debtor is not entitled to raise the defenses of Ms. Mobley and Varnadoe and Associates.

*2. Dischargeability of the Debt*

Under 11 U.S.C. § 523(a)(6), a Chapter 7 discharge does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Federal law governs the determination of what constitutes a willful and malicious injury under Section 523(a)(6). *See* Kawaauhau v. Geiger, 523 U.S. 57, 60-61, 118 S.Ct. 974, 976, 140 L.Ed.2d 90 (1998)(holding that debt arising from doctor's malpractice and reckless conduct does not fall within Section 523(a)(6) exception).

In Geiger, the Supreme Court narrowed the scope of Section 523(a)(6). The Court interpreted the statute such that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Geiger, 523 U.S. at 61, 118 S.Ct. at 977 (emphasis in original). The Court held that debts stemming from recklessly or negligently inflicted injuries will not be held nondischargeable under Section 523(a)(6).

Id. at 64.

Since Geiger, courts have endeavored to articulate the precise standard to apply to determine whether an injury is willful and malicious. As I have noted, "engaging in a voluntary act with the desire to cause harm or the knowledge that injury will occur to a targeted person is sufficiently 'willful and malicious.'" Henderson v. Woolley (In re Woolley), 288 B.R. 294, 301 (Bankr. S.D. Ga. 2001)(Davis, J.)(citing Johnson v. Fors (In re Fors), 259 B.R. 131, 136 (B.A.P. 8th Cir. 2001)). Engaging in a voluntary act with the belief that harm is substantially certain to occur is also sufficiently willful and malicious. Further, an injury is willful and malicious when there is objective substantial certainty of harm or a subjective motive to cause harm. Id. *See also* Blair v. Boughter (In re Boughter), Ch. 7 Case No. 02-40047, Adv. No. 02-04107, slip op. at 7-8 (Bankr. S.D. Ga. Sept. 5, 2003)(Davis, J.).

This Court has held that conversion of a creditor's property may constitute a willful and malicious injury. *See* First Liberty Bank v. LaGrone (In re LaGrone), 230 B.R. 900, 904 (Bankr. S.D. Ga. 1999)(Davis, J.)(holding that selling a vessel in which the bank held a security interest and keeping the proceeds constituted willful and malicious injury and debt was nondischargeable). This Court had occasion to decide an issue similar to the one at bar in First Liberty Bank v. Allen (In re Allen), Ch. 7 Case No. 98-40838, Adv. No. 98-04139, 1999 WL 33588549 (Bankr. S.D. Ga. Sept. 23, 1999)(Davis, J.). In Allen, the debtor forged the endorsement of a client on a jointly payable check, deposited it into his account with plaintiff bank, and withdrew the money. The client pursued the bank and recovered

$45,950.00. In turn, the bank sought reimbursement of the $45,950.00 from the debtor and sought to have the debt declared nondischargeable under Section 523(a)(6). This Court ruled that the debtor's actions in converting the check and the resulting injuries were deliberate and intentional. He injured his client by denying her the rightful payment of the check, and he injured the bank by causing them to be responsible to the client. The Court held, "[debtor] acted with the knowledge that his acts in converting these funds would cause specific injuries to [his client] and to [the bank], therefore meeting the requirements of Section 523(a)(6)." Id. at *3.

Similarly, Debtor's actions in this case satisfy the requirements of Section 523(a)(6). Debtor testified that he was aware that Bank had an interest in the Check and that Bank would be injured if he kept the proceeds of the Check for himself. Debtor knew that his act would harm Bank, yet he chose to deprive Bank of the proceeds. Thus, his actions are willful and malicious and nondischargeable under Section 523(a)(6).

Because I find the debt to be non-dischargeable under 11 U.S.C. § 523(a)(6), it is unnecessary to examine the Section 523(a)(4) argument.

3. *Damages*

Bank argues that because Debtor willfully and maliciously converted $24,606.00 from the Bank, the entire amount is nondischargeable under Section 523(a)(6). In response, Debtor contends that only the balance on the note should be declared

nondischargeable because Bank received $20,000.00 from the depositary bank and should not be allowed a double recovery. Bank acknowledges the $20,000.00 payment from the depositary bank, yet it contends that the money was not applied dollar for dollar to this specific debt because the dragnet language in the promissory note permitted the application of those funds to Debtor's other obligations.

The measure of damages for conversion of an instrument is presumed to be the amount payable on the instrument. O.C.G.A. § 11-3-420(b). However, the Bank's recovery may not exceed the amount of its interest in the instrument. Id. Bank received $20,000.00 from the depositary bank; therefore, Debtor should be entitled to a credit in that amount. See Tifton Bank & Trust Co. v. Knight Furniture Co., 452 S.E.2d 219, 222, 215 Ga. App. 471, 473 (1994); see also Trans-American Steel Corp. v. Fed. Ins. Co., 535 F. Supp. 1185, 1190 (N.D. Ga. 1982) ("[U]nder Georgia law, the liability of a depositary bank for wrongly honoring a forged endorsement will be reduced by any amount the forger has already paid in restitution to the drawer."). If Bank were to receive $20,000.00 from the depositary bank and an additional $24,606.00 from Debtor, then its recovery would exceed its interest in the instrument. Further, the depositary bank had a cause of action against Debtor for the $20,000.00, and had that action been pursued, it would have been inequitable to hold Debtor liable for the money twice.[1] Thus, I hold that only the balance of the note

---

[1] The Court notes that the depositary bank filed an adversary proceeding against Debtor to determine dischargeability of the debt owed to the depositary bank by virtue of the alteration of the restrictive endorsement. However, that action was voluntarily dismissed with prejudice for reasons unknown to the Court.

AO 72A
(Rev. 8/82)

10

should be declared nondischargeable.

Bank also requests that the attorney's fees and costs of collection be assessed against Debtor and be declared nondischargeable. The Eleventh Circuit held, "[T]he 'debt' excused from discharge in a successful Section 523 action would appear to include a debtor's contractual obligation to pay a creditor's attorney's fees." Transouth Fin. Corp. of Fla. v. Johnson, 931 F.2d 1505, 1507 (11th Cir. 1991). If the attorney's fees are properly payable, then they are nondischargeable.

Attorney's fees may be awarded to a creditor prevailing in a bankruptcy claim when authorized by statute or contract. When construing a contract for attorney's fees, the courts look to state law. Id. Under Georgia law, attorney's fees are recoverable when authorized in a contract. Bowers v. Fulton County, 183 S.E.2d 347, 348, 227 Ga. 814, 815 (1971). The promissory note provided that Debtor would pay any attorney's fees and legal expenses Bank incurred to collect the balance of the loan. Thus, attorney's fees in the amount of $6,942.96 are awarded to Bank and declared nondischargeable.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Debtor's debt to Bank in the amount of $6,095.41 is nondischargeable.

IT IS FURTHER ORDERED that Debtor shall pay $6,942.96 in

nondischargeable attorney's fees.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 4th day of October, 2004.

Cc: Debtor
    ~~~~~~~~~~~
    ~~~~~~~ - Bank of Lumber City
    ~~~~~~~ - Cunningham
    ~~~~~~~ - Rowland
    ~~~~~~~ - Brewer        10/4/04
    Trustee - Souther
    U. S. Trustee - James